IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

IN RE: SEARCH of
   6511 Crittenden Lane, Spotsylvania, VA   )
a black, Hyundai Santa Fe, NC Plate FDA-3737   )   CASE NO. 3:19SW166
a black, Toyota Tundra, IL Plate 2092621   )   167
a blue Mustang, NC Plate PFP-9820   )   168
   169

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jessica McIntyre, after being duly sworn, depose and state as follows:

1. I am a Special Agent with the Coast Guard Investigative Service (CGIS), and have been since 2014. Pursuant to 14 U.S.C §525, CGIS Special Agents have the statutory authority to conduct criminal investigations, make arrests without a warrant, and execute and serve any warrant or other process issued under authority of the United States. My responsibilities include criminal investigations involving United States Coast Guard (USCG) active duty members and civilians, as well as external investigations involving violations of federal law with a nexus to the USCG and/or USCG interests.

2. This affidavit is submitted in support of an application to search the following locations or things:

   a. Johnathan MOTT's residence at **6511 Crittenden Lane, Spotsylvania, Virginia 22553**;

   b. MOTT's privately owned vehicle (POV), **a black, Hyundai Santa Fe, identifiable with North Carolina Plate number FDA 3737**;

   c. MOTT's POV, **a black, Toyota Tundra identifiable with Illinois Plate number 2092621**;

    d.    MOTT's POV, **a blue Mustang, identifiable with North Carolina Plate PFP-9820**;

    e.    Any and all personal cellular telephones utilized by MOTT;

    f.    Any and all computers utilized by MOTT;

    g.    Any and all gaming consoles utilized by MOTT;

    h.    Any and all electronic media storage devices utilized by MOTT;

    i.    Any and all law enforcement paraphernalia not otherwise issued by the US Coast Guard;

    j.    Any and all documents indicating MOTT is a federal law enforcement officer or is stalking Angelina Mott, MOTT's wife.

3. Based on the facts set forth in this affidavit, there is probable cause that within these locations or things is evidence, more particularly described in Attachment A, of violations of federal law, including 18 U.S.C. § 912, 18 U.S.C. § 2261(a), 25 C.F.R § 11.404, and 25 C.F.R § 11.432.

4. This affidavit is being submitted for the limited purpose of obtaining a search warrant. As a result, it does not include each and every fact observed by me or known to the government. When I assert that a statement was made by an individual, that statement is described in substance and in part, but my assertion is not intended to constitute a verbatim recitation of the entire statement. When I assert that an event occurred or a communication was made on a certain date, I mean that the event occurred or the communication was made "on or about" that date.

### Additional Statutory Authority and Definitions

5. I bring to the Court's attention the following:

6. Under 18 U.S.C. § 912, "whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both."

7. Under 18 U.S.C § 2261A, "Whoever (1) travels in interstate or foreign commerce or is present within the special maritime and territorial jurisdiction of the United States, or enters or leaves Indian country, with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that (A) places that person in reasonable fear of the death of, or serious bodily injury to (i) that person; (ii) an immediate family member (as defined in section 115) of that person; (iii) a spouse or intimate partner of that person; or (iv) the pet, service animal, emotional support animal, or horse of that person; or (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of subparagraph (A); or (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that (A) places that person in reasonable fear of the death of or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse described in clause (i), (ii), (iii), or (iv) of paragraph (1)(A); or (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a

person described in clause (i), (ii), or (iii) of paragraph (1)(A), shall be punished as provided in section 2261(b) of this title.

8.  25 C.F.R. § 11.404, False Imprisonment, provides that "a person commits a misdemeanor if he or she knowingly restrains another unlawfully so as to interfere substantially with his or her liberty."

9.  25 C.F.R § 11.432, Impersonating a Public Servant, provides that "a person commits a misdemeanor if he or she falsely pretends to hold a position in the public service with purpose to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his or her prejudice."

### MOTT Resides at 6511 Crittenden Lane, Spotsylvania, Virginia 22553

10. MOTT is a current active duty US Coast Guard member, assigned to US Coast Guard Counter-Intelligence Service Command, located at USCG Headquarters, St. Elizabeth campus. During an interview with CGIS on 10 May 2019, MOTT provided his mailing address as 6511 Crittenden Lane, Spotsylvania, Virginia 22553.

### MOTT Utilizes Vehicles with license plate numbers FDA-3737, 2092621, and PFP-9820

11. According to Angelina Mott and MOTT, MOTT is the registered owner of one black, Hyundai Santa Fe, identifiable with North Carolina Plate number FDA-3737. CGIS has observed MOTT operating this vehicle.

12. According to Angelina Mott and MOTT, MOTT is the registered owner of one black, Toyota Tundra identifiable with Illinois Plate number 2092621. CGIS has observed this vehicle parked in front of 6511 Crittenden Lane, Spotsylvania, VA 22553 since at least May 10, 2019.

4

13. According to Angelina Mott and MOTT, Johnathan Mott is the registered owner of one blue Mustang, identifiable with North Carolina Plate PFP-9820. CGIS has observed this vehicle parked in the garage of 6511 Crittenden Lane, Spotsylvania, VA 22553 since at least May 10, 2019.

**<u>Mott utilizes multiple personal cellular telephones, computers, vehicles, gaming consoles, and electronic media storage devices</u>**

14. Between May 08 – 22, 2019, and over the course of several interviews with S/A Candi Meyers, S/A Chris Sims, Det Kristal DeGravio (Spotsylvania Sheriff Office), and myself, Angelina Mott stated MOTT possesses two law enforcement (LE) badges. One badge is metal and silver in color and the other badge is metal, gold in color, has an eagle on top, and says "US Coast Guard." Angelina states MOTT currently carries the gold badge in a foldable wallet, which contains a cut-out for the badge. Angelina also stated MOTT had previously carried the silver badge in the same type of wallet described as a leather wallet with a cut out for the badge. She had personally seen this silver badge they were living in New York.

15. According to Angelina, MOTT purchased these badges on the internet, and even sent one badge back to the company because it did not meet his specifications.

16. To her knowledge, MOTT has used the badges approximately 5-6 times to pull people over on the road. These incidents have occurred while she and MOTT have resided here in the state of Virginia, between September 2018 and the present.

17. Angelina Mott stated that in order to pull someone over, MOTT places the badge up to the window of his vehicle, and motions for the individual to pull their vehicle over on the side of the road. On one such occasion, Angelina was in the vehicle and witnessed MOTT pull over a young military member driving a purple and white car. MOTT approached the vehicle, asked the individual for his driver's license and Common Access Card (CAC). MOTT then

returned to his vehicle and took a photograph of both forms of identification with his cellular phone while she watched. MOTT returned the forms of identification to the individual, who subsequently drove away.

18. At no time has MOTT possessed the legal authority to carry such badges nor to act in any law enforcement capacity while being a member of the USCG.

19. Angelina stated that MOTT received a new cellular telephone within the past 3-4 months, but MOTT always backs up his old phones to his Google account using a computer, and when he receives a new phone, he transfers all the data from his Google account to his new phone.

20. Angelina stated MOTT has been tracking her movements, and believes he is doing so via her cellular phone or vehicle. Her vehicle, which was purchased and registered under MOTT's name, is a Hyundai and has "blueLink," a service similar to "OnStar."

   a. S/A Erik Hayes has confirmed MOTT has purchased and signed up for "blueLink" service under his name. Angelina was unaware that the "blueLink" service had been activated.

   b. On several occasions during the past few months, MOTT has either shown up at locations Angelina was, without his prior knowledge she was there, or texted her when she was at a location, identifying the location and asked her to bring him something back from that particular location.

   c. On May 10, 2019, Special Agent Candi Meyers and myself asked MOTT, specifically, if "blueLink" was activated on the car that Angelina drives, to which he responded "yes."

   d. Most recently, on or about the evening of May 11, 2019, Angelina was outside her residence, on the porch, when she witnessed her vehicle flash the

headlights/flashers and heard the vehicle locking/unlocking the doors. Angelina stated her keys were inside the house, upstairs in her purse. The "blueLink" service allows a person to conduct these activities on a vehicle from a remote location.

21. Angelina also stated that Mott has a habit of keeping old/used cellular devices and computers.

22. Mott is currently under both a military protective order (MPO) and a civil, preliminary protective order from the county of Spotsylvania, VA, for no contact with Angelina. The MPO prohibits MOTT from accessing or possessing any firearms or ammunitions. Both of these protective orders were put in place on May 10, 2019, and both are still valid.

23. Angelina stated MOTT possesses over 40 firearms, both long-barrel guns and pistols, and has sent CGIS Agents photographs of these firearms located in their home in Spotsylvania, VA. Angelina stated MOTT always carries a firearm on his person, or has one close-by.

    a. On May 10, 2019, MOTT told CGIS Agents he currently possesses a concealed carry firearms permit in the state of VA. He also told CGIS agents that he is an expert marksman in both the US Coast Guard and the US Marine Corps, that he has been competing since he was sixteen with firearms, and that he is a hunter.

    b. MOTT went on to tell CGIS agents that he carries a firearm for the "purview" of his work. MOTT does not currently hold a position in the US Coast Guard that would require or authorize him to carry a weapon. MOTT also stated, "You are federal law enforcement officers, and in some capacity I am in my purview as well."

7

24. Angelina also stated that MOTT was attempting to intimidate her and has threatened her immigration status, saying he was very powerful and would be able to find out where she was wherever she went because of his position within the government. Angelina also stated MOTT has called her crazy and told her she was stupid on several occasions.

    a. On May 10, 2019, MOTT told Special Agent Candi Meyers and myself that Spotsylvania Sheriff's Office had been called and responded to the residence located at 6511 Crittenden Lane, Spotsylvania, VA 22553 two times since they moved into the residence in December 2018. MOTT stated that on both occasions, the responding officers had told him he should take "actions as her husband to have her forced into some type of mental health facility." MOTT also stated a counselor assigned to him through the US Coast Gard had told him to put his spouse in a mental hospital.

    b. Detective Kristal DeGravio from the Spotsylvania Sheriff's Office told me that she had spoken to one of the responding officers and he told her he did not tell MOTT to have his spouse committed. Detective Degravio stated the officer told her that he thought something was wrong at the residence but did not have anything tangible to arrest MOTT.

25. On May 17, 2019, a military search authorization was served against MOTT for a personal cell phone associated to the phone number of (757) 254-4255 and the black, Hyundai Santa Fe with NC Plate number FDA-3737 while he was onboard the US Coast Guard Telecommunications Facility (TISCOM), located in Alexandria, VA. When MOTT produced the phone to be searched, law enforcement found that a new phone activation email was found, stating

8

that MOTT activated the phone approximately two hours prior to the search. A box for the phone was found in the vehicle along with what appeared to be a new wallet.

26. On May 20, 2019, while Angelina was looking through a box in the living room that contained items used by MOTT in order to show CGIS agents one of the old wallets she knew to be in that box, she discovered the wallet she had previously observed that contained the silver badge used by MOTT. Angelina stated MOTT specifically told her he was a Federal law enforcement officer, and that he had more authority than his half-brother who is a Police Officer in Henrico, VA.

    a. Angelina turned the wallet and silver badge over to Special Agent Chris Sims and myself on May 21, 2019. The wallet is a black leather wallet, with a cutout for the badge and appears to be well used; the badge is a metal, silver badge that is oval and has the words 'United States Coast Guard Maritime Enforcement 2012413' on it. The number on the badge has been identified as MOTT's US Coast Guard employee ID number.

    b. At no time during his total service in the US Coast Guard has MOTT held a position that authorizes him to carry a metal badge. There was also a Visa card and US Coast Guard form in the wallet bearing MOTT's name.

27. Based on this investigation, I know that MOTT tells others that he has a law enforcement background. Approximately one week prior to the allegation of domestic abuse being reported by Angelina, MOTT came to the CGIS office seeking information about becoming a CGIS Special Agent. On that day he spoke to both Special Agent Erik Hayes and Special Agent Candi Meyers, stating he was currently an operator with the Central Intelligence Agency (CIA) and had been detached from the US Coast Guard doing this duty for three years. On May 10, 2019,

when Special Agent Candi Meyers and myself interviewed MOTT, he stated he had a law enforcement background. When asked to clarify, MOTT stated that he had worked with the Military Police, and had "been involved in a myriad of things." MOTT went on to say when he got out of the United States Marine Corps., he worked with the Virginia police, went to a police academy, and has a "DCJS background."

    a. Based on a thorough records review of MOTT's US Coast Guard records, he has received, at best, minimal law enforcement training and has not performed detached duty with any other government agency.

    b. On May 10, 2019, when asked by myself what he had been doing while assigned to US Coast Guard Counter-Intelligence Service Command for the last 7 months, MOTT stated he had done "a couple things, but nothing in the scope of what I should be doing." While assigned to the Counter-Intelligence Service Command administratively, MOTT has been tasked with reporting to US Coast Guard Recruiting Station and has received no training in Counter-Intelligence.

    c. Although we have been unable, to this point, to confirm his status with Virginia police, MOTT disclosed on his clearance request forms that he was a member of the Newport News Police Department from February 2005 to June 2005.

    d. On May 10, 2019, MOTT stated to Special Agent Candi Meyers and myself, that, "I would just love the opportunity to be your guys' position one day, where I can be looking at that guy saying 'look man, I'm gonna look into this and if what you say is true, you're gonna be good to go.'"

### Evidence Is Likely to be Found in the Residence, Vehicles, and Electronic Devices

28. Based on my knowledge, training and experience, as well as that of other agents assigned to this investigation from CGIS, I know that electronic devices such as cellular telephones can store data for long periods of time. I also know that cellular phone users commonly backup and restore their phones from accounts such as Google using computers, gaming consoles, or other media storage, in order to transfer their data, apps, contacts, and photographs to new cellular phones. I also know that "blueLink" is available via an application called "MyHyundai" which can be downloaded and installed on a cellular phone, computer, or other media devices, linked to a "blueLink" account and "blueLink" capable vehicle, and has the ability to lock/unlock the vehicle, as well as "Find Your Car."

29. I know that computers, and other media devices that connect to the internet can store data for long periods of time. I also know that computer users commonly backup and restore email, photographs, and data when transferring use to a new electronic storage device. I also know that internet browser history can be recovered from new, old, or damaged computers, gaming consoles, and other media devices.

30. I know that individuals generally keep important documents, such as receipts, order forms, design concepts, and/or communications regarding purchases in their home or office. Although, MOTT is an active duty US Coast Guard member, he has not reported to a permanent duty location for approximately nine months. During an interview with CGIS, lasting two and one half hours, MOTT stated specifically that he retained all his belongings in the basement of his residence located at 6511 Crittenden Lane, Spotsylvania, VA 22553.

31. Based on my knowledge, training and experience, as well as that of other agents assigned to this investigation from CGIS, I know that important records are often maintained in

hard copy and/or digital form, such as on computers and other electronic devices. This application seeks permission to search and seize records that might be found in MOTT's residence, vehicles, cellular phones, computers, gaming consoles, and electronic media storage devices in whatever form they are found. One form in which records might be found is stored on the hard drive or other storage media of a computer or other electronic device. Some of these electronic records might take the form of files, documents, and other data that is user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

    a.    Based on this investigation, I know that MOTT has used at least eight different gmail or yahoo accounts to communicate with multiple different people and websites. These email address include; John.Mott.USCG@gmail.com; Marinejrm@gmail.com; Marinejrm@yahoo.com; Pistolshooter1911@gmail.com; Pistolshooter9mm@gmail.com; Sheppybuddy@gmail.com; Angelina.A.Mott@gmail.com; and John.R.Mott.USCG@gmail.com

    b.    Based on my knowledge and training, I know that computer files or remnants of computer files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear;

rather, that data remains on the storage medium until it is overwritten by new data.

c. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the storage medium that is not currently being used by an active file - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d. Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

32. I know that MOTT uses electronic devices and has attempted to deceive law enforcement and his command as to which device is his primary device. On May 17, 2019, at 10:30 am, MOTT contacted his command to inquire about the status of the investigation. His

command saw that he was calling from a number they didn't recognize as his; when asked what number he was calling from, MOTT stated he was calling from the hotel he was staying at. When CGIS agents checked the phone number, it was a random temporary Google number, not a number associated with the Sleep Inn, located at 595 Warrenton Road, Fredericksburg, VA 22406, where MOTT stated he was staying.

33. Based on the information described above, MOTT is likely to use and maintain electronic media equipment. Based on my training and experience, he is likely to use and maintain such equipment, including cellular phones computers, gaming consoles, and other electronic media storage, in his residence, specifically the basement, or in one of his vehicles. There is probable cause to believe evidence will be found in the residence, specifically the basement for at least the following reasons:

    a. Angelina has stated on multiple occasions that, after moving into the residence in December 2018, she went back to the Ukraine to visit her mother from January 02-24, 2019. When Angelina returned, MOTT had closed off the previously opened basement with a wall and door. The door had a deadbolt lock installed on it and Angelina was not given a set of the keys to open the door. Angelina then stated the basement is where MOTT keeps all his weapons, electronics, and personal items. She stated he lives in the basement and, although she does regularly go in the basement when he is home to "hang out" and have sex, she does not have a key.

    b. On May 10, 2019, MOTT told Special Agent Candi Meyers and myself that Angelina was unable to get into the basement, that there was a deadbolt, he has

the only key, and that "outside of getting a pry bar and literally knocking the wall down," there is no way in.

34. In light of these concerns, I request authority to seize the computer hardware, storage media, and associated peripherals that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to search the hardware, media, or peripherals on-site for this evidence. I further seek authority to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.

Conclusion

35. Based on the foregoing, there is probable cause that evidence of violations of federal law, including 18 U.S.C. § 912, 18 U.S.C. § 2261(a), 25 C.F.R § 11.404, and 25 C.F.R § 11.432, more particularly described in Attachment A, will be found in the locations described in Attachment B. Wherefore, I request the issuance of a search warrant pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

Special Agent Jessica McIntyre
United States Coast Guard

Subscribed and sworn to before me
on May 23, 2019.

/s/
THE HONORABLE RODERICK C. YOUNG
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A
## DESCRIPTION OF PREMISES TO BE SEARCHED

The PREMISES to be searched is:

    a.    JOHNATHAN ROSS MOTT's residence, located at 6511 Crittenden Lane, Spotsylvania, VA 22553. The residence is a two-story single family house in a newly built residential neighborhood. The residence is brown in color with white columns.



b.  MOTT's privately owned vehicle (POV), a black, Hyundai Santa Fe, identifiable with North Carolina Plate number FDA 3737;

c.  MOTT's POV, a black, Toyota Tundra identifiable with Illinois Plate number 2092621;

d.  MOTT's POV, a blue Mustang, identifiable with North Carolina Plate PFP-9820;

e.  Any and all personal cellular telephones utilized by MOTT;

f.  Any and all computers utilized by MOTT;

g.  Any and all gaming consoles utilized by MOTT;

h.  Any and all electronic media storage devices utilized by MOTT;

i.  Any and all law enforcement paraphernalia not otherwise issued by the US Coast Guard;

j.  Any and all documents indicating MOTT is a federal law enforcement officer or is stalking Angelina Mott, MOTT's wife.

# ATTACHMENT B
# ITEMS TO BE SEIZED

The items to be seized constitute fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 912, 18 U.S.C. § 2261(a), 25 C.F.R § 11.404, and 25 C.F.R § 11.432, including:

1. Notebooks or documents, records, or papers containing information relating to law enforcement impersonation or stalking;

2. Information pertaining to any recipients of law enforcement paraphernalia not otherwise issued by the US Coast Guard;

3. Information including information pertaining financial transactions related to the receipt of paraphernalia not otherwise issued by the US Coast Guard, or equipment able to be used to track another individual;

4. Information regarding law enforcement counter surveillance tradecraft, and/or how to avoid or evade detection by intelligence officials or law enforcement authorities;

5. Records of travel, including calendars, travel tickets, receipts, and photographs;

6. Information pertaining to any others who conspired with Johnathan Mott to convince others that he is a Federal Law Enforcement Officer and/or stalking his spouse;

7. Computer hardware, computer software, passwords and data security devices, cameras (including digital and video), telephones, handheld devices, computer related documentation, and other digital and electronic media, including storage devices that may have been used to portray himself as a federal law enforcement officer;

8. Records or documents evidencing ownership or use of computer hardware, computer software, telephones, cameras, handheld devices, electronic media and electronic storage devices, including sales receipts, bills for Internet access, and handwritten notes;

9. Miscellaneous papers, magazines, books, or any other pocket litter, especially that which may contain handwriting, computer-generated text or highlighted sections.

10. Items containing potential passwords or passphrases.